IN THE UNITED STATES DISTR ICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NAIEEM MOORE,                         :
     Plaintiff,                        :
                               :
     v.                                :     CIVL ACTION NO. 21-CV-0933
                                  :
CORRECTIONAL OFFICER                  :
ROSA, *et al.*,                       :
     Defendants.                        :

## MEMORANDUM

McHUGH, J.                                      **MARCH  25, 2021**

Plaintiff Naieem Moore, a pretrial detainee being held at the Philadelphia Industrial Correctional Center ("PICC"), filed this civil action pursuant to 42 U.S.C. § 1983.  He also seeks leave to proceed *in forma pauperis*.  For the following reasons, the Court will grant Moore leave to proceed *in forma pauperis*, dismiss certain claims without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and permit other claims to proceed.  Moore will be granted leave to file an amended complaint.

## I.    FACTUAL ALLEGATIONS[1]

The Complaint names as Defendants several officials and employees of PICC:  (1) Correctional Officer Rosa; (2) Correctional Officer Sgt. Miles; (3) John Doe, a disciplinary hearing officer; and (4) Michelle Ferrell, Warden.  (ECF No. 2 at 2.)[2]  The Court understands Moore to bring claims for excessive use of force, failure to intervene, violations of his due

---

[1] The facts set forth in this Memorandum are taken from Moore's Complaint and attached exhibits.

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

process rights, unconstitutional conditions of confinement, and deliberate indifference to medical needs, as well as related state law claims.

Specifically, Mr. Moore alleges that between 10 and 11 p.m. on December 7, 2020, while housed on J-Block, a segregation unit at PICC, an inmate flooded the top tier with toilet water and the contaminated water seeped into Moore's cell.  (ECF No. 2 at ¶ 9.)  Despite repeated requests by Moore and other inmates whose cells were similarly impacted, neither the "3 pm to 11 pm" nor the "11 pm to 7 am officers had the water cleaned up."  (*Id.* at ¶ 10.)  Moore asserts that the presence of the contaminated water that remained on the floor of his cell hindered his ability to offer his morning prayer in the manner prescribed by his religious beliefs and custom. (*Id.*)  On December 8, 2020, the toilet water had not yet been cleaned up when Defendant Rosa served breakfast to Moore.  (*Id.* at ¶ 11.)  When Defendant Rosa opened Moore's tray slot, Moore informed Defendant Rosa that he "wanted to speak with a 'white shirt' (i.e., sergeant/lieutenant) about having to spend the night with . . . [his] cell flooded with dirty toilet water."  (*Id.*)  According to Moore, Defendant Rosa left his tray slot open and finished serving breakfast.  (*Id.*)

Approximately ten minutes later, Defendant Rosa returned to Moore's cell, accompanied by Defendant Miles.  (*Id.* at ¶ 12.)  After Moore relayed his complaint to Defendant Miles, she allegedly asked Moore, "[i]f retards keep flooding the tier, what the fuck you want me to do about [it]?"  (*Id.*)  Moore contends that he responded, "your fucking job!" and "without warning Sgt. Miles began to pepper spray [him]."  (*Id.*)  He claims that Defendant Miles then slammed the slot closed and stated, "[t]hat's my fucking job!"  (*Id.*)  Moore alleges that he remained in his cell "burning up from the pepper spray" for approximately twenty minutes before he was taken to medical for decontamination.  (*Id.* at ¶ 13.)  Moore also claims that after he was pepper

sprayed, his sheets and blanket remained contaminated for several days.  (*Id.* at ¶ 23.)  He claims that he spent several days with little sleep because his skin "was constantly burning."  (*Id.*)  According to Moore, when he asked Defendant Rosa on January 4, 2021 why he pepper sprayed Moore, Defendant Rosa replied, "I didn't spray you, that was all her work (referring to Sgt. Miles)."  (*Id.* at ¶ 29.)  Moore alleges that Defendant Rosa also stated, "you know, she just started over here.  I guess she feeled like she had to set the tone."  (*Id.*)

Mr. Moore further alleges that on or about December 14, 2020, he received a letter from his mother explaining that his grandmother was ill and hospitalized.  (*Id.* at ¶ 14.)  Moore contends that he advised several unit officers, supervisors, and social and mental health workers of the issue and requested a phone call to his family.  (*Id.*)  He claims that he was informed that he would be given a phone call, but was later told that he was required to wait until he was moved from punitive segregation status to administrative segregation status.  (*Id.*)

Moore also alleges that he spoke with "Dr. G" on December 14, 2020, regarding his phone call request.  (*Id.* at ¶ 15.)  After looking into the matter, Dr. G informed Moore that due to the pepper spray incident, he was given a write-up and an additional fifteen days in the hole as a disciplinary sanction.  (*Id.* at ¶ 16.)  Because Moore explained to Dr. G that he was not told that he had been given a write-up, that he did not have a copy of the write-up, and that he did not have a misconduct hearing, Dr. G. advised Moore to file an appeal and grievance, as it appeared that the misconduct hearing was held without Moore present.  (*Id.* at ¶ 17.)  On December 20, 2020, Moore filed a misconduct appeal and a grievance asserting violations of his constitutional rights.  (*Id.* at ¶ 18.)  He claims that he never was provided with the Disciplinary Hearing Summary Report.  (*Id.* at ¶ 19.)

3

Additionally, Mr. Moore asserts that had he not received the additional punishment for the pepper spray incident, he was due to be removed from punitive segregation status on Christmas, and would have been able to call his family or have a video visit.  (*Id.* at ¶ 20.) According to Moore, the inability to speak with his family during the COVID-19 crisis and while his grandmother was ill, caused him "extreme mental anguish, pain and suffering."  (*Id.* at ¶ 21.) While on punitive status, Moore claims that he was: "confined to a cell for 23 hours and 40 minutes everyday; deprived of most of personal property, ability to work, attend educational and vocational programs, associate with other inmates, make social or legal phone calls, have any visitation with loved ones and associates, and purchase food items from the commissary."  (*Id.* at ¶ 22.)  Moore's inability to speak with his family during an emergency caused him great anxiety and depression, and resulted in loss of appetite, sleeplessness, anger, frustration, and fear.  (*Id.* at ¶ 24.)  He further avers that his numerous requests for counseling were not met.  (*Id.* at ¶ 26.) Moore asserts that had he been afforded due process with respect to the misconduct hearing, he may have successfully challenged the write-up and, accordingly, been afforded the opportunity to speak with his family earlier.  (*Id.* at ¶ 25.)

According to Mr. Moore, although he filed the misconduct appeal, "no action has been taken to remedy the due process violation."  (*Id.* at ¶ 27.)  Moore also contends that no disciplinary action has been taken against Defendant Miles.  (*Id.* at ¶ 28.)  He requests declaratory and injunctive relief, as well as damages.  (*Id.* at 8-10.)

## II.     STANDARD OF REVIEW

The Court grants Moore leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  Conclusory allegations do not suffice.  *Id.*  As Moore is proceeding *pro se*, the Court must construe his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III.    DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

---

[3] However, as Moore is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A.      **Excessive Force/Failure to Intervene and State Law Assault and Battery**

The Court understands Moore's Complaint as alleging excessive force and failure to intervene by Defendants Rosa and Miles based on the use of pepper spray on December 8, 2020. (*See* ECF No. 2 at ¶ 30.)  Because Moore was a pretrial detainee during all relevant times, the Due Process Clause of the Fourteenth Amendment governs his excessive force claim.  *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) ("[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (internal quotation and citation omitted).  To state a due process violation based on excessive force, a detainee must allege facts to plausibly suggest that "that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97.  "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*  Additionally, a fellow corrections officer or a supervisory officer is liable for a failure to intervene where a reasonable opportunity to intervene exists.  *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *see also Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (applying the *Smith* standard in a case brought by a pretrial detainee), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

Mr. Moore alleges that when Defendant Rosa opened his tray slot, he informed Defendant Rosa that he wished to speak with a "white shirt" about the flooded cell.  (ECF No. 2 at ¶ 11.)  According to Moore, Defendant Rosa gave Moore his tray, finished serving breakfast, and returned to his cell ten minutes later accompanied by Defendant Miles.  (*Id.*)  Moore claims that, after their interaction regarding Moore's complaint about the flooded cell, Defendant Miles pepper sprayed him "without warning."  (*Id.* at ¶ 12.)  Moore alleges that Defendant Miles then slammed the tray slot closed and walked away saying, "[t]hat's my fucking job."  (*Id.*)  Moore contends that this use of force was without need or provocation, and that the use of force and the failure to intervene to prevent the misuse of force, was done maliciously and sadistically.  (*Id.* at ¶ 30.)  Taking Moore's allegations as true, as the Court is obligated to do at this stage of the litigation, Moore will be permitted to proceed on his excessive force and failure to intervene claims against Defendants Rosa and Miles based on the events of December 8, 2020.

Moore also invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, to raise state law tort claims for assault and battery related to the pepper spraying incident.  (*See* ECF No. 2 at ¶ 31.)  "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. 1950)); *see also C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (a battery is harmful or offensive contact with another person).  The allegations supporting these state law claims are the same as those supporting Moore's excessive force and failure to intervene claims; therefore, the Court declines to dismiss these claims at this stage of the litigation.  *See Short v. Webb*, Civ. A. No. 18-4130, 2019 WL 4573254, at *5 (E.D. Pa. Sept. 20, 2019) (declining to dismiss state law claims

of assault, battery, and intentional infliction of mental distress as such claims were based on the same allegations that supported the excessive force claim which was permitted to proceed). Accordingly, the Court will also allow Moore's state law claims of assault and battery based on the pepper spray incident to proceed.

### B.      Procedural Due Process

Moore alleges further that he was given a "write-up" and "an additional fifteen days disciplinary sanction" for the pepper spray incident.  (ECF No. 2 at ¶ 16.)  Moore claims that Defendant John Doe, the Disciplinary Hearing Officer, violated Moore's procedural due process rights when he was not given advance notice of the disciplinary hearing which was held in Moore's absence and, therefore, Moore was unable to be present at the hearing, call witnesses, or otherwise gather evidence in his defense.  (*Id.* at ¶¶ 17, 19, 32.)  Moore also contends that he was not given a written disposition of the charges against him.  (*Id.*)

The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'"  *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).  With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing the due process protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 . . . (1974)."  *Id.*  Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement of the reasons for the disciplinary action taken and the supporting evidence."  *Id.* (citing *Wolff*, 418 U.S. at 563-66); *see also Quiero v. Ott*, 799 F. App'x 144, 146 n.6 (3d Cir. 2020) (per curiam);

*Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007). Construing the complaint liberally and giving Moore the benefit of all reasonable inferences, he has sufficiently stated a claim for a procedural due process violation against Defendant John Doe.

### C. Conditions of Confinement

Moore claims that the failure of Defendants Rosa and Miles "to have the dirty toilet water cleaned up from his cell without delay" constituted unsanitary conditions in violation of his constitutional rights. (*See* ECF No. 2 at ¶ 34.) To establish a basis for a Fourteenth Amendment violation, a pretrial detainee must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979); *Camps v. Giorla*, Civ A. No. 19-1662, 2021 WL 396271, at *1 (3d Cir. Feb. 4, 2021) (per curiam) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson*, 495 F.3d at 68. "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). In other words, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard

here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

The Court recognizes that unsanitary conditions can support a cognizable § 1983 conditions of confinement claim. *See, e.g., Conway v. Cty. of Camden*, Civ. A. No. 16-9550, 2017 WL 3783263, at *2-3 (D.N.J. Aug. 31, 2017) (finding plaintiff sufficiently pled a plausible basis for a claim that he experienced unconstitutionally punitive conditions as a detainee where he alleged, *inter alia*, that he was housed in a two-person cell with three other people and required to sleep on the floor next to the toilet with only a thin mattress, facility had only one set of fingernail clippers for all inmates on the unit and plaintiff sustained a skin infection, mold caused plaintiff to sustain respiratory problems, there was a lack of hot water in the cells, plaintiff sustained insect bites, and was housed with inmates infected with M.R.S.A.).  Here, however, Moore's allegations do not sufficiently state a plausible claim.  Moore essentially claims his cell became flooded between 10 and 11 p.m. and when breakfast was served the next morning, the contaminated water had not yet been cleaned up, hindering his ability to offer his morning prayer.  (*See* ECF No. 2 at ¶¶ 9-11, 34.)  In so doing, Moore has failed to allege sufficient facts showing that the failure to clean up the flooded cell in the timely manner he requested was punitive.  *See, e.g., Jackson v. Shouppe*, Civ. A. No. 17-1135, 2020 WL 3574645, at *8 (W.D. Pa. June 30, 2020) (finding plaintiff did not establish a due process violation when he was required to wait no more than five hours before being given the opportunity to shower, change his clothes, and clean his cell after experiencing symptoms of food poisoning and vomiting and defecating on his clothing and in his cell); *Wilks v. City of Philadelphia*, Civ. A. No. 18-4087, 2019 WL 4261159, at *5 (E.D. Pa. Sept. 6, 2019) (plaintiff's "concerns with his bedding, food, showers, and stagnant water over a six-month period do not rise to the level of

inhumane"); *Toomer v. Camden Cty. Corr. Facility*, Civ. A. No. 17-197, 2017 WL 2483700, \*7-8 (D.N.J. June 8, 2017) (noting the "length of exposure to allegedly unsanitary conditions or deprivations is one consideration in evaluating the objective prong to a claim of unconstitutional conditions of confinement" and concluding that plaintiff's "allegation of approximately 48 hours of toilet and water access issues did not rise to the level of a constitutional deprivation").  Failure to clean Moore's cell in a timelier fashion may reflect poor administration of the institution, but that is not the same as a constitutional violation.

> ### D.   Deliberate Indifference to Serious Medical Needs and Related State Law Claims

The Complaint also alleges that Moore remained in his cell "burning up from the pepper spray" for approximately twenty minutes before he was taken to medical for decontamination. (ECF No. 2 at ¶ 13.)  Mr. Moore further claims that after he was pepper sprayed, his sheets and blanket remained contaminated for several days.  (*Id.* at ¶ 23.)  He alleges that he spent several days with little sleep because his skin "was constantly burning."  (*Id.*)  According to Moore, the failure of Defendants Rosa and Miles "to offer or provide for . . . [Moore] to receive immediate medical attention to decontaminate after . . . [he] was pepper sprayed or to exchange . . . [his] sheets and blanket after they were contaminated with pepper spray constituted deliberate indifference to . . . [Moore's] serious medical needs" in violation of the constitution.  (*Id.* at ¶ 35.)  Moore further asserts that such alleged actions of Defendants Rosa and Miles constitute "the torts of intentional infliction of emotional distress and/or negligence and/or assault and battery" under Pennsylvania law.  (*Id.* at ¶ 36.)  However, Moore's allegations lack adequate factual development to support a plausible inference that the actions of Defendants Rosa and Miles caused the claimed constitutional violations.  Similarly, Moore has not alleged sufficient facts to support the state law claims.

### 1.   Deliberate Indifference to a Serious Medical Need

To state a deliberate indifference claim in the context of medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835; *see Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019) (analyzing pretrial detainee's inadequate medical care claim under same deliberate indifference standard used to evaluate similar claims brought under the Eighth Amendment). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference can be shown by "a prison official intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Wilks*, 2019 WL 4261159, at *5 (citing *Casilla v. New Jersey State Prison*, 381 F. App'x 234, 236 (3d Cir. 2010)). Furthermore, "[a] medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "[W]here denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

With respect to his first allegation of deliberate indifference to a serious medical need, according to the Complaint, Moore was left in his cell "burning up from the pepper spray for about 20 minutes before being taken to medical for decontamination."  (ECF No. 2 at ¶ 13.) Such allegation does not plausibly allege that either Defendant Rosa or Defendant Miles was deliberately indifferent in that they either intentionally refused to provide medical treatment, delayed the treatment, or personally prevented Moore from receiving such treatment after he was pepper sprayed.  *See, e.g., Passmore v. Ianello*, 528 F. App'x 144, 149 (3d Cir. 2013) (finding twenty-minute delay before allowing plaintiff to shower and receive medical care after being pepper sprayed did not constitute deliberate indifference to a serious medical need); *McCamey v. Craig*, Civ. A. No. 15-1108, 2016 WL 5816821, at *5 (W.D. Pa. Oct. 5, 2016) (allowing plaintiff to shower fifteen to twenty minutes after being sprayed showed that defendants were not deliberately indifferent to the effects of the spray); *Wade v. Colaner*, Civ. A. No. 06-3715, 2009 WL 776985, at *11 (D.N.J. Mar. 20, 2009) (finding defendants' decision not to immediately call for an ambulance after spraying arrestee with pepper spray did not rise to the level of deliberate indifference).

Additionally, Moore's allegation fails to state a serious medical need.  "[T]he mere fact that the plaintiff suffered injuries from an officer's use of typical detention tools which may cause pain, *e.g.*, pepper spray and handcuffs, does not automatically convert any injuries to 'serious medical conditions.'"  *Klein v. Madison*, 374 F. Supp. 3d 389, 424 (E.D. Pa. 2019); *see also McCamey*, 2016 WL 5816821, at *5 (finding plaintiff failed to allege a serious medical with respect to pepper spray incident because "[i]t is expected that there would be pain and discomfort after being exposed to pepper-spray" and noting that "simply alleging 'excruciating pain' is insufficient"); *Wade*, 2009 WL 776985, at *11 ("[T]he normal effects of pepper spray on a

person, *i.e.* burning, are not of the kind to constitute a serious medical need.  Indeed, "[t]he nature of pepper spray is to cause pain that dissipates without causing serious injury.") (citing *Frederick v. Hanna*, Civ. A. No. 05-514, 2006 WL 3489745, at *8 (W.D. Pa. Dec.1, 2006)).  *But see Bomar v. Wetzel*, Civ. A. No. 17-1035, 2020 WL 907641, at *5 (W.D. Pa. Feb. 3, 2020) ("Courts have held that the failure to decontaminate prisoners or otherwise provide medical treatment for prisoners exposed to pepper spray can support a claim for a violation of the Eighth Amendment where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.") (internal quotations and citations omitted), *report and recommendation adopted*, Civ. A. No. 17-1035, 2020 WL 906720 (W.D. Pa. Feb. 25, 2020).  Here, Mr. Moore fails to provide further details about his condition and fails to plead facts that show his symptoms rise to the level of a serious medical need.

Moreover, with respect to his second allegation of deliberate indifference to a serious medical need, Moore's Complaint fails to set forth a plausible constitutional violation.  Although the Complaint indicates that Moore's sheets and blanket remained contaminated for several days and that he spent several days with little sleep because his skin "was constantly burning," Moore does not sufficiently describe Defendant Rosa's or Defendant Miles's involvement in this alleged violation.  (*See* ECF No. 2 at ¶ 23.)  Rather, he merely alleges in a conclusory fashion that "[t]he failure of Defendants Sgt. Miles and C.O. Rosa to . . . exchange Plaintiff's sheets and blanket after they were contaminated with pepper spray constituted deliberate indifference to Plaintiff's serious medical needs" in violation of the Eighth and Fourteenth Amendments.  (*See id.* at ¶ 35.) "A defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  There simply are not enough facts in the Complaint to support a plausible inference that either Defendant Rosa or Defendant Miles

was aware that Moore's sheets and blankets remained contaminated for several days, much less

that either acted intentionally to refuse to provide medical treatment, delayed treatment, or

personally prevented Moore from receiving treatment.  Thus, the Complaint does not support

plausible deliberate indifference claims against either Defendant Rosa or Defendant Miles.

### 2.    State Law Claims

The Complaint alleges generally that the failure of Defendants Rosa and Miles to offer or

provide Moore immediate medical attention to decontaminate from pepper spray, or to exchange

his sheets and blanket that were contaminated, constitutes "the tort[s] of intentional infliction of

emotional distress and/or negligence and/or assault and battery."  (*See* ECF No. 2 at ¶ 36.)

However, Moore has failed to adequately plead such claims.

To state a claim for intentional infliction of emotional distress under Pennsylvania law, a

plaintiff must establish: "(1) the conduct must be extreme and outrageous; (2) it must be

intentional or reckless; (3) it must cause emotional distress; (4) that distress must be severe."

*Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. 1997) (citations omitted).  Pennsylvania courts

define "extreme and outrageous" conduct as "conduct that is so outrageous in character, so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in civilized society."  *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa.

Super. Ct. 2005) (citations omitted).  "[O]bjective proof of an injury is required."  *Gray v.

Huntzinger*, 147 A.3d 924, 928 (Pa. Super. Ct. 2016).  Here, Moore has alleged no such "extreme

and outrageous" conduct with respect to the twenty-minute delay in bringing him to medical for

decontamination after he was pepper sprayed, or that Moore's sheets and blanket remained

contaminated for several days.  *See Snider v. Pennsylvania DOC*, Civ. A. No. 15-951, 2020 WL

7229817, at *57 (M.D. Pa. Dec. 8, 2020) (finding allegations that corrections officers denied

plaintiff a shower because of his hearing impairment, refused to call the psychological services specialist when plaintiff asked to speak with him, laughed and yelled at plaintiff in front of the "entire block" and refused to notify medical staff when plaintiff began banging his head against the wall, does not rise to "outrageous or extreme conduct" as defined by Pennsylvania law). Moreover, the Complaint does not set forth facts that show intentional or reckless conduct on the part of either Defendant Rosa or Defendant Miles with respect to these allegations.

Mr. Moore's Complaint also does not state cognizable negligence or assault or battery claims, as it includes only bald assertions that Defendants Rosa and Miles committed these torts by failing to offer or provide immediate medical attention after Moore was pepper sprayed, or to exchange his contaminated sheets and blanket.  Moore has not specifically alleged what Defendant Rosa or Defendant Miles did or did not do from which a Court could conclude that they were negligent, or committed assault or battery, in this context.  "In Pennsylvania, the elements of negligence are: a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff." *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018) (citing *R.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005)).  Although Moore has utilized the term "negligence" he has failed to present any facts supporting such a claim.  Additionally, as stated above, assault is "is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk*, 641 A.2d at 293; *C.C.H.*, 940 A.2d at 340 n.4 (a battery is harmful or offensive contact with another person).  Again, Moore merely presents the bald assertion that Defendants Rosa and Miles committed the torts of assault and/or battery.

Thus, Moore has failed to plead, other than in conclusory terms, plausible causes of action for intentional infliction of emotional distress, negligence, assault, or battery related to the actions of Defendants Rosa and Miles after the pepper spraying incident. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief." (internal quotations omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### E.    Claims against Defendant Ferrell

Moore alleges that Defendant Ferrell is responsible for reviewing all misconduct appeals at PICC and that on December 20, 2020, he filed a misconduct appeal complaining of constitutional violations.  (*See* ECF No. 2 at ¶¶ 7, 18.)  Moore further alleges that the actions of Defendant Ferrell "in holding up the decision of the Disciplinary Hearing Officer (Defendant John Doe)" violated Moore's due process rights.  (*Id.* at ¶ 33.)  Such allegations, however, fail to sufficiently allege Ferrell's personal involvement in the constitutional violation.  *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Spears v. Curcillo*, Civ. A. No. 13-3053, 2015 WL 7016366, at *9 (M.D. Pa. Nov. 12, 2015) (plaintiff's allegations that defendants failed to take corrective action in response to his submitted grievances that they supposedly reviewed and denied were insufficient to show personal involvement); *Watson v. Rozum*, Civ. A. No. 12-35J, 2012 WL 5989202, at *5 (W.D. Pa. Oct. 29, 2012) ("[T]he fact that these Defendants responded unfavorably to Plaintiff on appeal of his disciplinary hearing does not establish the requisite personal involvement for liability in the alleged issuance of a retaliatory misconduct or otherwise under § 1983 for the

underlying unconstitutional conduct.") (citing cases), *report and recommendation adopted*, 2012 WL 5989245 (W.D. Pa. Nov. 29, 2012).

Mr. Moore also claims that Defendant Ferrell's failure to take disciplinary action to curb the known pattern of physical abuse of inmates by Defendants Rosa and Miles constituted deliberate indifference to Moore's safety and caused the violation of his constitutional rights. (*See* ECF No. 2 at ¶ 37.)  To the extent that Moore intended to plead a claim of supervisory liability, such attempt failed.  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*

Moore's conclusory assertion, without more, is insufficient to state a plausible claim of supervisory liability.  *See Aruanno v. Corzine*, 687 F. App'x 226, 229 (3d Cir. 2017) (per curiam) (claims that supervisors failed to train, supervise or discipline subordinates failed when plaintiff "did not show that the Defendants were aware of the violations alleged in his complaint, either before or after they occurred."); *Argueta v. U.S. Immigr. & Customs Enf't*, 643 F.3d 60, 74 (3d Cir. 2011) (explaining that "broad allegations regarding the existence of a 'culture of lawlessness'" were essentially conclusory allegations that deserve "little if any weight" in

determining whether plaintiff stated a claim).  Moore has not alleged facts from which it can be plausibly inferred that Defendant Ferrell established a policy, practice, or custom that caused Moore's injury.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (explaining that "a complaint must do more than allege the plaintiff's entitlement to relief," rather, "[a] complaint has to 'show' such an entitlement with its facts."); *see also Harris v. Peer*, Civ. A. No. 20-9461, 2020 WL 7707021, at *2 (D.N.J. Dec. 29, 2020) (finding plaintiff's allegation that Warden failed to respond to one prior instance of alleged excessive force by defendant corrections officer insufficient to establish that Warden established a custom of permitting excessive force to go unpunished, with deliberate indifference to the risk of a constitutional violation by a subordinate).

### F.    Official Capacity Claims against Defendants John Doe and Ferrell

Moore has named Defendants John Doe and Ferrell in their official capacities.  Claims against City officials named in their official capacity are indistinguishable from claims against the City.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, n.55 (1978)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.*

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy

with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)), *cert. denied*, 140 S. Ct. (2019).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

To the extent Moore seeks damages from Defendants John Doe and Ferrell in their official capacities, he has failed to allege facts that support *Monell* liability.  Moore has not alleged a municipal policy or custom, that such a policy or custom caused a constitutional violation, or municipal failures amounting to deliberate indifference.  Accordingly, the official capacity claims are not plausible.

## IV.    CONCLUSION

For the foregoing reasons, the following claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim: (1) conditions of confinement claim against Defendants Rosa and Miles; (2) deliberate indifference to serious medical needs and related state law tort claims of intentional infliction of emotional distress, negligence, assault, and battery against Defendants Rosa and Miles; (3) individual capacity claims against Defendant Ferrell; and (4) official capacity claims against Defendants Ferrell and John Doe.  Because the Court cannot say at this time that Moore can never assert plausible claims, such claims will be dismissed without prejudice and with leave to amend if Moore can cure the defects the Court has identified.  The Court will give Moore an opportunity to file an amended complaint in the event he seeks to amend his dismissed claims.

The Court is prepared to direct service of the Complaint on Moore's remaining claims.  Moore may notify the Court that he wishes to proceed on these claims only.  If Moore chooses not to file an amended complaint, the Court will direct service only as follows: (1) on Defendants Rosa and Miles with respect to Moore's excessive force and failure to intervene claims under the Fourteenth Amendment, as well as his related state law claims for assault and battery, and (2) on Defendant John Doe with respect to the procedural due process claim.[4]

---

[4] The Court is aware that although Moore is entitled to service by the United States Marshals Service, *see* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3), it is highly unlikely the Marshals Service could properly serve the Summonses and Complaint without more precise identifying information for this individual such as last name, first name, rank, physical description, etc. Therefore, if Moore opts to proceed on this claim, the Court will consider adopting the approach taken by the Second Circuit Court of Appeals in *Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998) to facilitate service.  In *Davis*, the Second Circuit recognized that under certain circumstances a court should not dismiss otherwise colorable § 1983 claims against supervisory personnel, who are not alleged to otherwise have personal involvement, until a *pro se* plaintiff has been afforded an opportunity, at least through limited discovery, to identify the subordinate officials who have personal liability.  *Id.* at 920-21 (observing that "courts have pointed out the appropriateness of

An appropriate Order follows, which provides further information about options for proceeding in this case.

                                   **BY THE COURT:**

                                   **/s/ Gerald Austin McHugh**
                                   _____
                                   **GERALD A. McHUGH, J.**

---

maintaining supervisory personnel as defendants in lawsuits stating a colorable claim until the plaintiff has been afforded an opportunity through at least brief discovery to identify the subordinate officials who have personal liability").